IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| EVE WILSON, | ) |
| Plaintiff, | ) ) ) |
| v. | ) ) Case No. 23-cv-00531-SH |
| WAL-MART STORES EAST, L.P., | ) ) ) |
| Defendant. | ) ) |

**OPINION AND ORDER**

Before the Court is Walmart's motion to enforce settlement agreement.[1] Walmart contends it reached a settlement with Wilson through her then-attorney, Andrew Schwartz. The record demonstrates that Wilson gave Schwartz express authority to settle and that a legally enforceable agreement was formed. The motion will be granted.

The Court, however, does not yet grant the requested relief of dismissal with prejudice. Instead, the Court will dismiss after Walmart fulfills its side of the bargained-for settlement.

**Procedural Background**

Plaintiff Eve Wilson ("Wilson") filed this suit against Wal-Mart Stores East, L.P. ("Walmart") in October 2023, asserting claims of negligence and premises liability.[2] (ECF No. 2-2.)

In December 2024, Wilson's attorney, Andrew David Schwartz ("Schwartz"), filed an emergency motion to withdraw, citing a "fundamental and irreconcilable

---

[1] The parties have consented to the jurisdiction of a U.S. Magistrate Judge for all purposes under 28 U.S.C. § 636(c)(1) and Fed. R. Civ. P. 73(a). (ECF No. 29.)

[2] Wilson's state-court petition named multiple Walmart entities whose names were corrected to Wal-Mart Stores East, L.P., after removal. (*See* ECF Nos. 4, 8.) An additional defendant, Wal-Mart of Oklahoma, Inc., was dismissed by stipulation on January 12, 2024. (ECF No. 20.)

disagreement" with Wilson, who opposed the motion. (ECF No. 49 ¶¶ 3, 10.) The Court misread the motion as unopposed, granted it, and set a status hearing for January 21, 2025. (ECF No. 50.) The Court corrected its mistake three days later by (1) vacating its prior order to the extent it allowed Schwartz to withdraw and (2) directing Wilson to respond by January 6, 2025. (ECF No. 53.) Wilson did not respond, and Schwartz was again granted withdrawal on January 13, 2025. (ECF No. 54.) During the period when the motion was pending, as discussed *infra*, Wilson allegedly authorized Schwartz to settle this litigation on her behalf, and Schwartz allegedly did so.

On January 20, Schwartz filed a "Notice of Settlement" that states, "Plaintiff, by and through her respective counsels of record[,] . . . give[s] this . . . notice that the parties have reached a settlement in this case." (ECF No. 55.) In light of this filing, on January 21, the Court struck the status hearing and noted an entry of appearance was to be filed by Schwartz. (ECF No. 56.) Schwartz then filed a new entry. (ECF No. 57.)

Later that day, Wilson filed two letters on the docket. The first letter is dated January 16. (ECF No. 58.) In it, Wilson requests an emergency motion to reinstate Schwartz as her attorney of record. (*Id.*) The second letter appears to have been handwritten when Wilson "arrived at court" for the January 21 status conference.[3] (ECF No. 59.) In this letter, Wilson states:

> "I did not authorize Andrew Schwa[r]tz to settle out of court. I do not want anything to do with him. . . . I want a fair settlement from Walmart. I do not want to settle for $10,000. . . . I need a new attorney to represent me. I do not want the settlement he, Mr. Schwartz, filed."

(*Id.*)

---

[3] "I arrived at court per the letter I received and I was told I was on the doc by multiple people. I had my friend drive me down here. I then find out about this settlement and struck from the docket without my permission." (ECF No. 59.)

2

In light of these contradictory filings, the Court set a status conference that was held on January 29, 2025. (ECF Nos. 62 & 63.) At the start of the hearing, Wilson agreed that Schwartz was representing her and was authorized to speak on her behalf.[4] Walmart then represented its belief that it had a settlement in this case, and Schwartz indicated there might be a disagreement between himself and his client as to whether that settlement had been entered. On this basis, the Court imposed a deadline for Walmart to file a motion to enforce settlement and set the matter for an evidentiary hearing. (ECF No. 63.) The Court advised Wilson that, if her counsel developed a conflict and withdrew, she could ask for additional time in the briefing.

Walmart filed its motion to enforce on February 17, 2025. (ECF No. 64.) On March 3, 2025, Schwartz filed another motion to withdraw—this time asserting a conflict—and that motion was granted. (ECF Nos. 65 & 67.) The Court also extended the time for Wilson to file her response brief. (ECF No. 67 at 2.[5]) In her response, Wilson, pro se, states that she "is not now nor has she ever been in agreement with the settlement that has been proposed" and otherwise complains that the settlement amount is inadequate.[6]

---

[4] The undersigned has reviewed the audio recording of this hearing.

[5] Citations to page numbers in court filings refer to the Court-provided header.

[6] Pro se plaintiffs are given some benefit of the doubt, but the Court must refrain from assuming the role of advocate. *See Firstenberg v. City of Santa Fe*, 696 F.3d 1018, 1024–25 (10th Cir. 2012); *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). Relevant here, the Court will not assume evidence exists that was not presented at the evidentiary hearing. *See Dunn v. Shinseki*, No. 14-cv-00367, 2015 WL 2455463, at *4 (D. Colo. May 22, 2015) ("Although the plaintiff is pro se . . ., her pro se status does not excuse her failure to present any admissible evidence in support of her claim."); *see also Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005) (citing *Hall* and explaining "the court cannot take on the responsibility of serving as [a pro se] litigant's attorney in constructing arguments and searching the record").

(ECF No. 68.) The motion has been fully briefed, and the evidentiary hearing was held on May 8, 2025.[7] (ECF Nos. 70 & 78.)

**Factual Findings**

Based on the evidence presented at the hearing, the undersigned makes the following findings of fact relevant to the issues before the Court:

Schwartz testified without contradiction that he was counsel for Wilson the day settlement was reached and that Wilson gave him express authority to settle both orally and via text message.[8] (ECF No. 78 at 9:24–10:1, 10:17–23, 14:17–20.[9]) It is the policy of Schwartz's office to confirm settlement authority in writing before entering into settlement negotiations. (*Id.* at 23:8–12.) On December 30, 2024, at 3:45 p.m., Schwartz sent Wilson the following text message: "Please reply 'CONFIRM' if you will accept at least $6,000 after all fees, costs and expenses, you have not filed for bankruptcy and you are on SSDI, but have represented it is not income based." (*Id.* at 16:12–17:15 & Def. Ex.

---

[7] An evidentiary hearing is usually required when the parties dispute material facts concerning the existence of a settlement agreement. *United States v. Hardage*, 982 F.2d 1491, 1496–97 (10th Cir. 1993).

[8] As noted above, Wilson has asserted that she neither authorized Schwartz to settle (ECF No. 59) nor agreed to the settlement (ECF No. 68 at 2). At the hearing, the Court again confirmed with Wilson that she was contesting whether she authorized Schwartz to enter into the settlement. (ECF No. 78 at 15:13–17.) Because Wilson placed Schwartz's authority at issue, the Court found attorney-client privilege had been waived regarding the settlement communications. (*Id.* at 15:18–20.) Under Oklahoma law, a client waives the privilege when she puts protected information at issue by making it relevant to the case and when the privilege would deny the opposing party access to information vital to its defense. *See Seneca Ins. Co. v. W. Claims, Inc.*, 774 F.3d 1272, 1276 (10th Cir. 2014) (collecting lower court cases predicting Oklahoma would adopt a version of the so-called "*Hearn* test"). This applies to situations where a client puts her attorney's settlement authority at issue. *See Rubel v. Lowe's Home Ctrs., Inc.*, 580 F. Supp. 2d 626, 629 (N.D. Ohio. 2008); *Smith v. MV Transp., Inc.*, No. 21-CV-349, 2023 WL 3467775, at *4 (W.D. Tex. May 15, 2023); *Watchous Enters., L.L.C. v. Pac. Nat'l Cap.*, No. 16-1432, 2017 WL 4786185, at *4 (D. Kan. Oct. 24, 2017); *Hunt v. Schauerhamer*, No. 15-CV-1, 2016 WL 75064, at *2–3 (D. Utah Jan. 6, 2016).

[9] Citations to hearing transcripts use the page:line numbering from the transcript itself.

4

11.) Wilson testified that the telephone number to which the text was sent was, indeed, her number. (ECF No. 78 at 30:10–13.) At 3:47 p.m., Wilson replied, "Confirm." (*Id.* at 17:16–23 & Def. Ex. 11.) Schwartz understood this confirmation to mean he had authority to settle if Wilson received at least $6,000 after all fees, costs, and expenses. (ECF No. 78 at 17:24–18:3.) Wilson did not impose any other conditions on Schwartz's authority to settle.[10]

On January 2, 2025, Schwartz and Walmart's counsel agreed via telephone to settle Wilson's case for $70,000 in exchange for release of all claims, dismissal of all claims, final lien letters, and Walmart's right to issue separate checks to lienholders. (*Id.* at 10:6–12.) After the conversation, Walmart's counsel emailed Schwartz to confirm their agreement, and Schwartz replied, "Agreed." (*Id.* at 10:13–16 & Def. Exs. 1–2.)

Schwartz testified that Walmart's offer satisfied the $6,000 requirement at the time it was accepted and that he accepted the offer based on Wilson's grant of authority. (ECF No. 78 at 19:13–20:5.) Lastly, Schwartz testified that he did not place undue pressure on Wilson to engage in settlement talks and that there was no fraud, mistake, or duress involved in obtaining settlement authority. (*Id.* at 10:24–11:8.)

Other than testifying that she did not settle the case (*id.* at 27:1–5, 28:17–19), Wilson disputed none of Schwartz's testimony. She did not dispute that she verbally agreed to settle, that she confirmed in writing the parameters by which she would settle, or that the agreed-to settlement met the required parameters. Instead, Wilson's

---

[10] For example, there is no evidence that Wilson excluded from Schwartz's authority the ability to agree that Walmart could pay lienholders directly—at least so long as Wilson received the minimum $6,000 net.

5

testimony focused on the limiting effects of her injuries.[11] (*Id.* at 26:3–9, 27:18–28:3, 28:22–29:3.) The Court finds Schwartz's testimony to be credible and finds that the events in question occurred as he testified.[12]

## Analysis

### I. General Legal Standard

A federal district court "has the power to summarily enforce a settlement agreement entered into by the litigants while the litigation is pending before it." *Shoels v. Klebold*, 375 F.3d 1054, 1060 (10th Cir. 2004) (quoting *Hardage*, 982 F.2d at 1496). A settlement agreement is merely a contract where parties agree to resolve their disputes and avoid litigation by reaching mutually acceptable terms. *Whitehorse v. Johnson*, 2007 OK 11, ¶ 9, 156 P.3d 41, 46. Therefore, whether a settlement agreement is formed is a matter of state contract law. *Walters v. Wal-Mart Stores, Inc.*, 703 F.3d 1167, 1172 (10th Cir. 2013).

Under Oklahoma law, settlement agreements can be oral or written and are subject to the rules of offer, acceptance, and mutual assent. *Brewer v. City of Seminole (In re De-Annexation of Certain Real Prop. from City of Seminole)*, 2009 OK 18, ¶ 8, 204 P.3d 87, 89. Further, the following elements are "essential" to contract formation: (1) parties capable of contracting; (2) their consent; (3) a lawful object; and (4) sufficient consideration. Okla. Stat. tit. 15, § 2. Settlement agreements are typically enforced absent fraud, duress, undue influence, or mistake. *Whitehorse*, ¶ 9, 156 P.3d at 46 (explaining Oklahoma law favors fair, good-faith settlement agreements); *see also* Okla. Stat. tit. 15, § 53.

---

[11] Wilson was repeatedly reminded of the need to submit evidence at the hearing, and the Court provided her with multiple opportunities to do so. (ECF No. 78 at 20:20–23; 25:2–5; 28:13–15; 28:20–21; 29:19–21; 30:17–18; 39:9–14.)

[12] To the extent Wilson's testimony can be construed as disputing that she gave Schwartz authority to settle on her behalf, the Court does not find her to be credible.

## II.    Schwartz Had Express Authority to Settle

The key, if not lone, issue raised is whether Wilson consented to the contract—that is, whether Schwartz had authority to accept Walmart's settlement offer.

Because the attorney-client relationship is one of agency, Oklahoma law has held that an attorney can settle on behalf of his client when he is acting with express actual authority or apparent authority. *Hays v. Monticello Ret. Ests., L.L.C.*, 2008 OK CIV APP 74, ¶¶ 8, 14, 192 P.3d 1279, 1281–82 (noting there is no generalized implied authority of an attorney to settle his client's lawsuit) (citing *Scott v. Moore*, 1915 OK 850, ¶ 1, 152 P. 823, 824; *Sparks Bros. Drilling Co. v. Tex. Moran Expl. Co.*, 1991 OK 129, ¶ 17, 829 P.2d 951, 954). Express settlement authority arises from a client's explicit grant. *Scott*, ¶ 1, 152 P. at 824; *see also* Restatement (Third) of Agency § 2.01 cmt. b.[13] If a client denies granting her attorney express settlement authority, the party seeking to enforce the settlement bears the burden of proving otherwise by a preponderance of the evidence. *Hays*, ¶ 15, 192 P.3d at 1282. Absent express authority, a settlement agreement can still be enforced under a theory of apparent authority if the *client's conduct* led the opposing side to reasonably believe the client's attorney had settlement authority. *Id.* ¶ 14, 192 P.3d at 1282; *see also McGehee v. Sw. Elec. Energy Corp.*, No. CIV-15-145, 2017 WL 8778817, at *1 (W.D. Okla. Nov. 30, 2017) (enforcing settlement agreement under theory of apparent authority).

Walmart has sufficiently proved that Schwartz received express settlement authority from Wilson. As noted above, the Court finds credible Schwartz's testimony that he received settlement authority from Wilson both orally and via text message. There is no

---

[13] Oklahoma courts regularly cite the Restatement (Third) of Agency as authority on the common law of agency in Oklahoma. *See, e.g., Sur. Bail Bondsmen of Okla., Inc. v. Ins. Comm'r*, 2010 OK 73, ¶ 23, 243 P.3d 1177, 1185 (citing § 1.01 of the Restatement).

dispute that the $70,000 settlement would, at the time agreed to, result in Wilson receiving at least $6,000 after all fees, costs, and expenses were paid. Implied in Wilson's express grant of such monetary settlement authority is that she would dismiss and release her claims against Walmart. *Cf. Coulter v. Carewell Corp. of Okla.*, 2001 OK CIV APP 36, ¶¶ 21–26, 21 P.3d 1078, 1083–84 (finding acceptance of financial offer contained an implied promise to execute release of claims) (collecting cases). Schwartz had the express authority to enter into the settlement memorialized in counsel's e-mail exchange.[14] Because the Court finds Schwartz was acting with Wilson's express authority, it need not address apparent authority.[15]

### III. A Valid Settlement Agreement Was Formed

Having determined that Schwartz had express settlement authority, the Court next determines whether a legally enforceable settlement agreement was formed. As noted above, an enforceable contract requires (1) parties capable of contracting, (2) their consent, (3) a lawful object, and (4) sufficient consideration. Okla. Stat. tit. 15, § 2. Further, "[a] contract includes not only the promises set forth in express words, but all

---

[14] As noted in *supra* n.10, Wilson does not argue or provide any evidence that her express grant of settlement authority excluded Schwartz from agreeing that Wilson must provide final lien letters or that Walmart could pay lienholders directly. Instead, the uncontradicted evidence demonstrates Schwartz had broad authority to settle as long as Wilson received a net amount of at least $6,000. (ECF No. 78 at 17:24–18:3.) *See also Elam v. Town of Luther*, 1990 OK CIV APP 7, ¶ 6, 787 P.2d 1294, 1296 ("In addition to express authority granted by the principal, an agent has such implied authority to perform such acts as are incidental to, or reasonably necessary to accomplish the intended result."); Restatement (Third) of Agency § 2.02(1) ("An agent has actual authority to take action . . . implied in the principal's manifestations to the agent and acts necessary or incidental to achieving the principal's objectives . . . .").

[15] In her filings, Wilson appears to question the adequacy of her legal representation. (*See* ECF No. 59 ("I do not want anything to do with [Schwartz]. He had me do a deposition while on morphine.").) Such arguments "are irrelevant to the determination of whether a party gave her attorney express authority to enter into a settlement agreement." *Harris v. Ark. State Highway & Transp. Dep't*, 437 F.3d 749, 752 (8th Cir. 2006) (citation and internal quotation marks omitted).

such implied provisions as are indispensable to effectuate the intent of the parties and as arise from the language of the contract and the circumstances under which it was made." *Whitehorse*, ¶ 9, 156 P.3d at 46.  The Court briefly addresses each element in turn.

### A. Capacity

Under Oklahoma law, all persons are capable of contracting, with certain exceptions.  *See* Okla. Stat. tit. 15, § 11 (excepting minors, persons of unsound mind, and persons deprived of civil rights).  A person has capacity if she has "the ability to comprehend in a reasonable manner the nature and effect" of the contract.  *Evans v. First Nat'l Bank of Stillwater*, 1944 OK 53, ¶ 14, 146 P.2d 111, 113.  Oklahoma law presumes the capacity to contract, and a party asserting a lack of capacity bears the burden of proof.  *Cushing v. McWaters*, 1918 OK 608, ¶ 3, 175 P. 838, 839.  To the extent Wilson's references to her prescription medications, including morphine, are an attempt to raise a lack of capacity argument (ECF Nos. 58, 59, 68 at 1), Wilson has presented no medical evidence or testimony to overcome the presumption of capacity.  *See, e.g.*, *DeClue v. Gen. Motors Corp.*, No. 99-2229, 2000 WL 1472856, at *1–2 (D. Kan. Aug. 22, 2000) (applying Kansas law and finding plaintiff's statement that medication made her confused was, by itself, insufficient to establish a lack of capacity) (collecting cases); *see also Chester v. Parsons*, No. CIV-19-860, 2021 WL 4343609, at *3 (W.D. Okla. Apr. 19, 2021) ("Plaintiff fails to inform the Court regarding how the alleged lack of prescription medication had affected his ability to sign the settlement agreement.").  What little testimony Wilson gives is focused on the physical effects of her injuries, not on the cognitive effects of her medications.  (*See, e.g.*, ECF No. 78 at 26:5–6 ("I've had three surgeries already."); 27:23–24 ("I can't play with my . . . grand babies because of [my injuries]."); 29:2 ("I'm chronic in pain.").)  Wilson was capable of entering into the settlement agreement.

**B. Consent**

Consent must be free, mutual, and communicated. Okla. Stat. tit. 15, § 51. "Consent is not mutual unless the parties all agree upon the same thing in the same sense." *Id.* § 66. This requires "a meeting of the minds . . . on all material parts of the agreement . . . ." *Watkins v. Grady Cty. Soil & Water Conservation Dist.*, 1968 OK 24, ¶ 14, 438 P.2d 491, 494. Generally, the material parts of a settlement agreement are (1) the payment of a specified amount (2) in exchange for the dismissal and release of claims. *Gates Corp. v. Bando Chem. Indus.*, 4 F. App'x 676, 685–86 (10th Cir. 2001) (unpublished);[16] *see also Towers v. Wyandotte Cty. Sherriff's Off.*, No. 17-2615, 2018 WL 6324867, at *7 (D. Kan. Dec. 4, 2018) (material parts of settlement agreement typically include the case name, the parties, dismissal and release, and payment).

Here, Wilson's agent expressly agreed to all the terms Walmart now seeks to enforce, material or not. There is no evidence of fraud, duress, menace, undue influence, or mistake. *See* Okla. Stat. tit. 15, § 53. The evidence instead suggests that Wilson's attorney agreed to a settlement within the scope of his express authority, but Wilson later changed her mind after settlement was reached. This is not a valid reason to undo the settlement agreement in this case. *See Woods v. Dep't of Revenue*, 45 F.3d 377, 378 (10th Cir. 1995) (noting, outside the context of certain statutes, "a party who knowingly and voluntarily authorizes the settlement of her claims cannot avoid the terms of the settlement simply because she changes her mind").

---

[16] Unpublished decisions are not precedential, but they may be cited for their persuasive value. 10th Cir. R. 32.1(A).

### C. Lawful Object/Sufficient Consideration

The last two elements—a lawful object and sufficient consideration—have also been met. Settlement agreements are not only lawful but are favored under Oklahoma law. *Whitehorse*, ¶ 9, 156 P.3d at 46. Further, Wilson's release and dismissal of her claims against Walmart, in exchange for $70,000 in payments ($6,000 of which would go to her), constitutes sufficient consideration.[17] *See Hargrave v. Canadian Valley Elec. Coop., Inc.*, 1990 OK 43, ¶ 17, 792 P.2d 50, 56 ("As a general rule, consideration exists as long as there is a benefit to the promisee or a detriment to the promisor.").

As such, the Court finds Walmart and Wilson entered into a valid, legally enforceable settlement agreement.

## IV. Dismissal is Premature

Walmart asks the Court to enforce the parties' settlement agreement and dismiss this lawsuit with prejudice. As noted above, the Court agrees that Walmart and Wilson entered into a binding agreement to settle, and that agreement will be enforced. Pursuant to that agreement, Walmart has agreed to pay $70,000 (reserving the right to issue separate checks to lienholders) in exchange for Wilson's release of all claims, her dismissal of all claims, and final lien letters. Walmart, however, has not presented evidence that it has, in fact, issued such payment. Traditionally, dismissal of the litigation is the last step after the other conditions in the settlement agreement have been fulfilled.

---

[17] It is possible that, since the settlement agreement was reached, additional liens have been asserted against Wilson. Any such loss in the net value of Wilson's settlement is a direct result of her refusal to acknowledge the agreed-to settlement and does not rob the contract of the consideration that supported it when it was entered. *See Ferrero v. Siel*, 1964 OK 248, ¶ 15, 397 P.2d 501, 504 ("Adequacy and sufficiency of consideration should be judged by circumstances and conditions existing at the time the contract is made . . . ." (quoting *Tate v. Murphy*, 1949 OK 228, ¶ 0, 217 P.2d 177, 179)).

The Court will delay entering the requested dismissal until after Walmart has made the payment mandated by the parties' settlement.

IT IS THEREFORE ORDERED that *Defendant's Motion to Enforce Settlement Agreement* (ECF No. 64) is GRANTED.

IT IS FURTHER ORDERED that, by August 7, 2025, Walmart shall file a status report with the Court regarding its provision of the payment required by the parties' settlement. Upon receipt of evidence that such payment has been made, the Court will dismiss the above-captioned action with prejudice.

ORDERED this 16th day of July, 2025.

_____
SUSAN E. HUNTSMAN, MAGISTRATE JUDGE
UNITED STATES DISTRICT COURT